AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the
Southern District of Ohio



|  |  |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>1502 Gatekeeper Way, Centerville, Ohio, 45458,<br>including any outbuildings, storage facilities, garages and<br>curtilage associated with this location | )<br>)<br>)<br>)<br>)<br>)    Case No. 3:22 111 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2

located in the     **Southern**    District of     **Ohio**     , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 26 U.S.C. s. 7201 | willfully attempting to evade or defeat any tax imposed by Title 26 |
| 28 U.S.C. s. 7206(1) | filing false tax return subscribed under penalty of perjury |

The application is based on these facts:

See Attached Affidavit of Elizabeth E. White

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Elizabeth E. White, SA of IRS-CI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: April 6, 2022

*Judge's signature*

City and state: Dayton, Ohio      Caroline H. Gentry, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Elizabeth E. White, a Special Agent with the Internal Revenue Service, Criminal Investigation hereinafter referred to as the Affiant, being duly sworn, deposes as follows:

## I. INTRODUCTION

1.      I have been a Special Agent with the Internal Revenue Service - Criminal Investigation since June 2011. I am assigned to the Cincinnati Field Office, with my principal post of duty in Dayton, Ohio. I am a graduate of the Criminal Investigator Training Program and Special Agent Basic Training at the Federal Law Enforcement Training Center in Glynco, Georgia. As a special agent, I conduct financial investigations of potential criminal violations of Title 18 (money laundering and related specified unlawful activities), Title 26 (criminal tax violations), and Title 31 (Bank Secrecy Act) of the United States Code. During my time as an agent, I have conducted and/or participated in numerous criminal investigations including the execution of multiple search and seizure warrants.

## II. PURPOSE OF AFFIDAVIT

2.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for search warrants for the following premises:

        a.      Select Auto, 1713 Woodman Drive, Dayton, Ohio, including any outbuildings, storage facilities, garages and curtilage associated with this location (hereinafter "SELECT AUTO BUSINESS ADRESS"). The SELECT AUTO BUSINESS ADDRESS is more fully described in Attachment A-1, and Attachment A-1 is incorporated by reference herein.

        b.      1502 Gatekeeper Way, Centerville, Ohio, 45458, including any outbuildings, storage facilities, garages and curtilage associated with this location (hereinafter

1

"VAISH RESIDENCE"). The VAISH RESIDENCE is more fully described in Attachment A-2, and Attachment A-2 is incorporated by reference herein.

      3.    As detailed more fully below, based on the investigation in this case, I assert that there is probable cause to believe that evidence, contraband, and the fruits associated with the following federal felony offenses (collectively, "Target Offenses") are being stored at, or can be found in the SELECT AUTO BUSINESS ADDRESS and the VAISH RESIDENCE:

      a.    Willfully attempting to evade or defeat any tax imposed by Title 26, in violation of Title 26, United States Code, Section 7201; and

      b.    Filing false tax return subscribed under penalty of perjury, in violation of Title 26, United States 7206(1).

      4.    Based on my training and experience as well as the information detailed below, I believe that there is probable cause to believe that the items listed in Attachment B will be found at SELECT AUTO BUSINESS ADDRESS and the VAISH RESIDENCE. Attachment B is incorporated by reference herein.

      5.    The information set forth herein is based on my knowledge, training and experience, that of other IRS-CI agents with whom I have conferred, surveillance, undercover operations, and my review of various records including tax records and public records. Because this affidavit is only offered to demonstrate probable cause in support of the requested search warrants, it does not purport to set forth all facts known to this investigation.

## III. PROBABLE CAUSE

**Summary of the Investigation**

      6.    I am currently investigating RAJESH VAISH ("VAISH") for various federal tax crimes related to a tax evasion scheme. As detailed below, VAISH owns and operates MS Auto

Sales doing business as ("d/b/a") Select Auto ("Select Auto"). Select Auto is a used car dealership currently being advertised for sale and located at 1713 Woodman Drive, Dayton, OH 45420.

        a.        For each of the tax years 2017-2020, VAISH signed under penalty of perjury and filed with the Internal Revenue Service, Partnership Tax Returns for Select Auto which reported for each tax year less than $1,400,000 in gross receipts and $80,000 or less in net income. For each of the tax years 2017-2019, VAISH also signed under penalty of perjury and filed with the Internal Revenue Service, personal tax returns jointly with his wife, Sunita Vaish, which reported for each tax year less than $89,000 in total income; most of the reported income on the personal tax returns for those years came from a Select Auto Schedule K-1. In 2020, in addition to income from Select Auto Schedule K-1, VAISH's personal tax return also reported a $35,000 Capital Gain for a total reported income of $114,000 for that year.

        b.        During 2022, VAISH and his broker provided an IRS-CI undercover agent ("UCA") posing as a prospective buyer of Select Auto, with information indicating that VAISH's personal and business income tax returns are false. Specifically, VAISH, through his broker, provided financial documents for tax years 2019-2021 showing that Select Auto netted approximately $491,338.95 in 2021, approximately $449,092.53 in 2020 and approximately $414,187.75 in 2019. VAISH showed the UCA notebooks that corroborated the financial information previously provided by the broker. VAISH has indicated to the UCA that business records verifying Select Auto's actual income, profits, and expenses are stored at Select Auto located at 1713 Woodman Drive, Dayton, OH 45420 (*i.e.*, SELECT AUTO BUSINESS ADDRESS) and at his residence located at 1502 Gatekeeper Way, Centerville, OH 45458 (*i.e.*, VAISH RESIDENCE).

**MS Auto Sales dba Select Auto**

7.      VAISH is joint owner, along with his wife, Sunita, of Select Auto, and IRS records indicate that VAISH filed partnership tax returns for tax years 2017-2020.  The returns were filed with the United States, Internal Revenue Service during calendar years 2018 through 2021.  I have reviewed the partnership tax returns for each of these years and, each return was signed under penalty of perjury.  Based on surveillance, public records, tax records, and comments made by VAISH detailed below, Select Auto started in 2010 and is a used car dealership.

8.      As detailed below, Select Auto has not reported significant profits/taxable income for multiple years on its business tax return.  Select Auto is a Partnership and is required by the IRS to file an annual income tax return on IRS Form 1065.  As part of the Form 1065, the business must report all its income and expenses, as well as provide a balance sheet summarizing the businesses' assets, liabilities, and partners' capital.  Partnerships are pass-through entities.  This means its profits are passed through and taxed on each partner's personal income tax returns and the partners are responsible for paying any assessed taxes.

9.      Select Auto filed Forms 1065 for each of the tax years 2017-2020.  Each return was signed under penalty of perjury and filed with the United States, Internal Revenue Service between 2018 and 2021.  The returns reported the following relevant information for those years:

| MS Auto Sales dba Select Auto | | | | |
|---|---|---|---|---|
| | **2020** | **2019** | **2018** | **2017** |
| Gross Revenue | $1,353,273 | $1,260,113 | $993,128 | $1,147,220 |
| Cost of Goods Sold (COGS) | $1,178,323 | $1,125,164 | $754,670 | $1,008,973 |
| Deductions | $97,434 | $104,155 | $158,128 | $83,478 |
| **Net Income/ (Loss)** | **$77,516** | **$30,794** | **$80,330** | **$54,769** |

Note: Forms 1065 for tax years 2015 and 2016 were also reviewed and follow a similar pattern to the years summarized above. Net income for tax year 2015 was $70,232 and net income for tax year 2016 was $71,023.

4

**Rajesh Vaish's Personal Tax Information**

10.     IRS records indicated that VAISH filed joint personal income tax returns (IRS Form 1040) with his wife, Sunita Vaish, for each of the tax years 2017 through 2020. The returns were signed under penalty of perjury and filed with them with United States, Internal Revenue Service between 2018 and 2021. The returns reported the following relevant information for those years:

| TAX YEAR | 2020 | 2019 | 2018 | 2017 |
|---|---|---|---|---|
| W-2 Wages | $0 | $0 | $0 | $0 |
| Taxable Interest | $0 | $6,184 | $602 | $261 |
| Qualified Dividends | $1,828 | $0 | $0 | $0 |
| Sch D – Cap. Gains | $35,208 | $0 | $0 | $0 |
| Other Income – Sch K-1 | $77,516 | $82,794 | $80,330 | $54,769 |
| **TOTAL INCOME** | **$114,552** | **$88,978** | **$80,932** | **$55,030** |
| Less: Deductible SE Tax | $5,476 | $,5850 | $5,676 | $3,870 |
| Less: Standard Deduction & Exemptions | $24,800 | $24,400 | $24,000 | $24,850 |
| Less: Form 8995 – Qual. Bus. Inc. Deduction | $14,408 | $5,724 | $10,251 | $0 |
| **TAXABLE INCOME** | **$69,868** | **$53,004** | **$41,005** | **$26,310** |
| **TAX** | **$7,960** | **$5,975** | **$4,542** | **$3,016** |
| Less: Child Tax Credit & Edu. Credit | $0 | $2,500 | $2,500 | $776 |
| Less: SE Tax | $10,952 | $11,699 | $11,350 | $7,738 |
| Less: Est. Tax Payment | $0 | $10,000 | $9,978 | $14,700 |
| Add: Est. Tax Penalty | $244 | $331 | $21 | $150 |
| **TOTAL TAX DUE OR (REFUND)** | **$19,156** | **$5,505** | **$3,435** | **($4,572)** |

11.     For at least 2017 through 2020, neither Rajesh nor Sunita reported any wages from Select Auto. From 2017 through 2019, the only income reported on the personal returns are from income amounts of taxable interest and Schedule K-1 flow through income from the business, Select Auto, ranging from approximately $54,769 to $82,794.

12.     In tax year 2020, in addition to the taxable interest and Schedule K-1 flow through income, VAISH reported Capital Gains of $35,208 as a result of selling approximately $1,435,728 in various capital assets.

**Undercover Operations**

13.     Select Auto is currently being advertised for sale on an internet website BizQuest. The advertisement states Select Auto is a "very successful business" and has $1.7 million in gross revenue, $600,000 in annual profits, and cash flow of $500,000. However, according to IRS records, as detailed in the paragraphs above, the advertised income is inconsistent with the income reported on the business's Forms 1065 for tax years 2017-2020. For at least the last four years, Select Auto has never reported more than $1.3 million in gross revenue or $81,000 in net profits.

14.     Vinayak Joshi, who identified himself as "Vinny", is a broker representing VAISH in the sale. On or about February 2022, a UCA posing as a prospective buyer called Vinny from information received from BizQuest and spoke with him regarding Select Auto. After their conversation, Vinny emailed the UCA financial statements for years 2019-2021 for the used car dealership. The provided financial statements, as summarized below, reported the following Cost of Goods Sold:

| Tax Year | 2020 Seller Financial Statements | 2019 Seller Financial Statements |
|---|---|---|
| Cost of Goods Sold | $643,430 | $684,276 |

15.     As previously reported in paragraphs above, Select Auto's tax returns reflect a 2020 and 2019 total Cost of Goods Sold of approximately $1,178,323 and $1,125,164, respectfully. The below summarizes the difference in the Cost of Goods Sold reported on the business tax returns compared to the provided financial statements:

| Tax Year | 2020 Seller Financial Statements | 2020 Form 1065 | 2019 Seller Financial Statements | 2019 Form 1065 |
|---|---|---|---|---|
| COGS – Purchases | $371,609 | $610,710 | $348,960 | $608,690 |
| COGS – Labor | $59,173 | $168,055 | $57,823 | $105,695 |
| COGS – Repo Cost | $2,285 | $2,285 | $3,794 | $1,080 |
| COGS – Repairs to Cars | $88,760 | $275,670 | $162,670 | $262,670 |
| COGS – Title Fees | $96,816 | $96,816 | $92,434 | $102,434 |
| COGS – Warranty | $1,527 | $1,527 | $1,980 | $1,980 |
| COGS – Delivery of Car | $23,260 | $23,260 | $16,615 | $16,615 |
| **Cost of Goods Sold** | **$643,430** | **$1,178,323** | **$684,276** | **$1,099,164** |

This reflects an overstatement of Cost of Goods Sold of approximately $534,893 in 2020 and approximately $414,888 in 2019.

16.     The financial statements, as summarized below, also reveal the business has either omitted or understated expenses which involved commissions and guaranteed payments to owners. Approximately $163,316 in expenses were not reported in 2020 and approximately $57,495 in expenses were not reported in 2019. Had these expenses been properly reported, they would have been subjected to employment taxes.

| Tax Year | 2020 Seller Financial Statements | 2020 Form 1065 | 2019 Seller Financial Statements | 2019 Form 1065 |
|---|---|---|---|---|
| Commissions | $67,222 | $0 | $13,495 | $0 |
| Owner Draw | $96,000 | $0 | $96,000 | $52,000 |

17.     In late February 2022, the UCA met with VAISH and broker, Vinny, at the SELECT AUTO BUSINESS ADDRESS in Dayton, Ohio. The UCA captured this meeting via video and audio recording. During the meeting, VAISH provided the following information:

- VAISH stated he purchased Select Auto in December 2009 and opened it January 2010.

- VAISH stated he was selling the business because he wanted to move. He daughter lives in New York and wants to be closer to her.

- VAISH stated he owns the business, and that he does not have any loans, including no loans for his house nor property.

- VAISHS stated there is approximately $600,000-$700,000 in vehicle inventory. VAISH stated he does not finance the vehicles on the lot and that he has the titles to all the vehicles.

- VAISH stated he keeps money in the bank but sometimes has $100,000 at his home. He stated he tells his wife to use the cash when she goes to different places.

- VAISH told the UCA that he would be surprised at how much he made. VAISH stated he sold approximately 150 cars and his profit was around $650-700,000 for a 50% profit.

- VAISH stated that the UCA and his partner could each make approximately $100,000 per month running the dealership.

- VAISH stated he is the only one with access to the office and that the sales information is kept there as well as at his home. VAISH further stated his wife completes the title and transfer paperwork at their home.

- VAISH indicated from 2014 to current his profit has been between $400,000-650,000 per year.

- The UCA told VAISH that the broker did not provide copies of tax returns when he provided him with the financial statements. VAISH stated that the "tax return is not right."

- VAISH stated he has one credit card and bank account and that all the business expenses are paid with the credit card, a check, or an ACH from the bank account.

- VAISH stated the only expenses he pays for the business in cash is a small amount for gas for the vehicles. All of the vehicle expenses/repairs are paid for with the credit card.

- VAISH stated he has a book that he uses to keep track of the profit for each car sold since 2004. VAISH stated the book was at his house – namely, the VAISH RESIDENCE.

- VAISH stated the book is a personal thing because he wants to know how much money he makes each year. He further indicated he does not pay the tax on the full amount shown within the book and stated, "I pay tax under $100,000 each year."

- VAISH stated he can hire an attorney should anything happen with his income taxes.

- The broker, Vinny, stated the provided financial statements were prepared by VAISH's accountant. (Note: as detailed in the above paragraphs, the financial statements do not match the tax returns on file with the IRS).

- VAISH stated the profit shown on the financial statements will match the profit in his book.

8

- VAISH stated he has cash, real estate here (Dayton), real estate in India, and real estate in New York. He claimed he purchased a condominium in New York.

18.     During the late February 2022 meeting, VAISH agreed to leave the dealership and travel home, *i.e.*, to the VAISH RESIDENCE, to retrieve the book and additional records to prove the accuracy of the numbers on the provided financial statements. Prior to doing so, the UCA, VAISH, and Vinny discussed what documents/records would match. When discussing whether the numbers on the tax returns will match, VAISH stated "when I tell him I need this profit, he will adjust it."

19.     During the late February 2022 meeting, VAISH left the dealership and went to his home located at the VAISH RESIDENCE to retrieve the book. One of the cover teams traveled to VAISH's home, witnessed VAISH leave the VAISH RESIDENCE and travel back to the SELECT AUTO BUSINESS ADDRESS. After returning to the SELECT AUTO BUSINESS ADDRESS, VAISH resumed his meeting with the UCA and Vinny. During this session, VAISH produced records that he had retrieved from the VAISH RESIDENCE and discussed the following information:

- VAISH reviewed the book he retrieved from his home with the UCA.

- VAISH showed the UCA how he calculated the net profit using the numbers written in the book for each year from 2013-2021, ranging from $393,000 to $656,000.

- On multiple occasions VAISH explained how he and his accountant would change the actual expense numbers. For example:

    - VAISH stated: "Whatever the number I give, he would say, Just give me the profit. I would say, make it $80,000." The UCA asked how he did that and VAISH responded "What he will do, car purchases were 371… He'll say we bought car for 770."

    - VAISH stated, "… I just tell him whatever is coming, I don't care. Total profit should be 70 or 90."

9

- VAISH stated "… Numbers are there, but he will manipulate that… at the time of taxes, that's all."

- VAISH stated the max social security able to be collected from the government is $2,500. He further explained that he makes his income show just enough so that he will receive that maximum social security later in life.

- The UCA questioned if, all expenses pass through the business account, how they are able to be inflated without there being a discrepancy. VAISH responded "If there is anything happen… then there are attorneys out there." He also indicated that he would bribe an attorney stating: "And we think that they don't take a bribe, bribe, bribe, but everyone takes a bribe."

- VAISH indicated that he did not believe he would be looked at for taxes due to the dollar amount involved. He stated: "they are not coming for the, this 500, 600,000 people." He believes only people making millions or billions will be looked at.

- When discussing his accountant, VAISH further stated: "He will do what I say. He said… I asked him last year… My profit was very good. I said, someone can catch me? He said, Raj, there is 8 million, taxes are behind. They are not able to check that."

- VAISH showed the UCA two investment accounts that each had approximately a half a million dollars and a third account with approximately $131,000. He stated he has Robinhood and TD investment accounts.

- VAISH stated "And in this business, I am making, I am just cheating the government… No one else."

**Additional Information Regarding Places to be Searched**

20.     SELECT AUTO BUSINESS ADDRESS is the business address of MS Auto Sales dba Select Auto. Based on his statements and public records, VAISH purchased the land and building located at 1713 Woodman Drive, Dayton, Ohio 45420. Surveillance as recently as April 2022 confirmed that Select Auto continues to operate at the SELECT AUTO BUSINESS ADDRESS.

21.     During the Undercover Operation, the UCA spoke with VAISH at SELECT AUTO BUSINESS ADDRESS. During that meeting, the UCA observed in plain view records, paperwork, and computers at the business. VAISH, in fact, showed the UCA some of these records

as part of their discussions described above. The records reflected financial information concerning Select Auto that would be indicative of whether the returns previously filed are true and correct. Accordingly, I believe that there are records contained at SELECT AUTO BUSINESS ADDRESS relevant to the crimes alleged above.

22.     Based on public records, VAISH purchased his current residence – the VAISH RESIDENCE – in December 2010. As detailed above, during the undercover operation, when VAISH left the dealership to retrieve the book, an undercover team observed him leaving the VAISH RESIDENCE and travel back to the dealership at which time he shared the additional financial information with the UCA. Based on VAISH's statements and actions during the undercover meeting, he acknowledged that he kept paperwork related to his business at the VAISH RESIDENCE as well as the SELECT AUTO BUSINESS ADDRESS. Based on surveillance as recently as April 2022, VAISH still lives at and occupies the VAISH RESIDENCE.

23.     Your affiant is aware that individuals who own closely held businesses often maintain a home office so they can work from home. In addition, individual business owners often maintain and/or preserve business records at their homes so they can efficiently work from their home office.

24.     Your affiant is also aware that individuals typically keep personal financial records at their homes including tax records, personal bills, asset records (*e.g.*, deeds and insurance policies), bank statements, checks, and check registers. For tax purposes, individuals typically retain such records for several years. In fact, the IRS counsels individuals to keep records supporting their tax returns for multiple years from the date of filing of the return.

25.     VAISH indicated that he skims cash from the business. As a result, it may be necessary to use an indirect method of proof, such as a net worth analysis, to determine VAISH's true

11

tax liability. In a potential net worth tax investigation, it is necessary to document any and all expenditures made by a target of an investigation during the years under investigation. It is also critical to determine VAISH's "Cash on Hand" in calculating a potential criminal tax liability, especially in circumstances involving skimming cash off the businesses' books. One of the purposes for searching VAISH's residence and business is to identify the skimmed cash via a cash hoard in order to determine the Cash on Hand, as well as document any and all expenditures and improvements made to these properties. Additionally, VAISH told the UCA he keeps a large amount of cash at his home.

### IV. AFFIANT'S KNOWLEDGE

Based on my experience, knowledge, and training, as a Special Agent, the experience of other Special Agents, and persons knowledgeable in computer forensics, I know:

26.     That individuals engaged in an income-producing activity normally maintain financial records, income tax records, property records, and business records in their residences and offices for many years. Financial, property, and business records are also maintained on computers, discs, flash drives, DVD drives, detachable drives, and other electronic devices that store data and are maintained at residences and offices;

27.     Owners and operators of businesses maintain records including: invoices, cash receipts journals, loan records, notes, ledgers, bank records, blank forms, contracts, receipts, copies of cashier's checks, copies of money orders, customer lists, and other financial instruments. Business records including books, ledgers, copies of checks, and employee information are maintained where they are most readily accessible, usually on the business premises but sometimes at the residence of the business owner;

28. Businesses typically maintain safes on the premises in which cash, receipts, and other records are often kept in the ordinary course of business. Individuals suspected of skimming cash from their businesses also typically maintain safes at their businesses in which cash is hoarded since the skimmed cashed would be discovered if deposited into a bank account. Additionally, high-income individuals maintain safes at their businesses in which to store receipts for personal expenses, titles & deeds for real estate, luxury assets such as jewelry or precious metals, and other records documenting the individual's wealth; individuals also maintain records related to the ownership of their vehicles in their residences and vehicles;

29. Affiant believes that the federal tax returns filed by VAISH are fraudulent and that VAISH has been underreporting his income since on or before 2019. VAISH claims he does not report all of the cash from his business and that he overstates his expenses on his business tax returns. Affiant knows that it is often impossible to directly prove the income of people who have engaged in a pattern of financially deceptive or unrecorded transactions. In those cases, the IRS must resort to a net worth or other indirect analysis. To perform that analysis, it is necessary to have the records for a base year immediately preceding the first year in which suspect activities have been identified. When conducting an indirect analysis, determining VAISH's Cash on Hand is critical in calculating a potential criminal tax liability, especially in circumstances involving skimming cash off the businesses' books. Furthermore, it is necessary to document any and all expenditures made by a target of an investigation during the years under investigation and deduct all nontaxable sources of income such as loans, gifts, and inheritances. One of the purposes for searching VAISH's business and residence is to identify a cash hoard in order to determine the Cash on Hand, as well as document any and all expenditures and improvements made to the property. This would include obtaining serial or manufacturer numbers for appliances and electronics, the identification and

13

documentation of any and all furnishings within or improvements to the property, to secure any papers or documentation of expenditures that exist within the business and residence;

30.     Business owners often use computers to record business information and generate business documents including sales data, accounting information, inventory reports, customer lists and the like.

Computers, Electronic Storage, and Forensic Analysis

31.     As described above and in Attachment B, this application seeks permission to search for records that might be found at the locations in Attachments A1-A2 in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Federal Criminal Procedure Rule 41(e)(2)(B).

32.     I submit that if a computer or storage medium is found at the locations described in Attachment B, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

          a.     Based on my knowledge, training, and experience, as well as that of agents trained in computer forensics, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained

14

in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.      Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.      Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.      Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

e.      Based on actual inspection of other evidence related to this investigation, I am aware that computer equipment was used to generate, store, and print documents used in the tax evasion scheme. There is reason to believe that there are computer systems currently located at the business and residence of VAISH.

33.     As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of

15

their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium at VAISH's business or residence because:

a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b.      As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (*e.g.*, registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate

16

whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (*e.g.*, a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (*e.g.*, internet searches indicating criminal planning), or consciousness of guilt (*e.g.*, running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.       A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.       The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.       Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

34.       In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

18

a.     The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site.  Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence.  Storage media can store a large volume of information.  Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b.     Technical requirements.  Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.  The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises.  However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c.     Variety of forms of electronic media.  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

35.     Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant.  The later review may require

techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

36.     Because several people could be residing at VAISH's residence, it is possible that the residences will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. Nonetheless, if it is determined that the things described in this warrant could possibly be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items, as well.

37.     According to records reviewed, Select Auto ("the Company") is a functioning company that conducts legitimate online business. The seizure of the Company's computers may limit the Company's ability to conduct its legitimate business. As with any search warrant, I expect that this warrant will be executed reasonably. Reasonable execution will likely involve conducting an investigation on the scene of what computers, or storage media, must be seized or copied, and what computers or storage media need not be seized or copied. Where appropriate, officers will copy data, rather than physically seize computers, to reduce the extent of disruption. If employees of the Company so request, the agents will, to the extent practicable, attempt to provide the employees with copies of data that may be necessary or important to the continuing function of the Company's legitimate business. If, after inspecting the computers, it is determined that some or all of this equipment is no longer necessary to retrieve and preserve the evidence, the government will return it.

## V. CONCLUSION

38.     Based on my knowledge, training and experience, that of other agents with whom I have conferred, and the facts detailed above, I submit that there is probable cause to believe

RAJESH VAISH, acting along and/or in concert with others, filed false business and/or personal income tax returns in violation of 26 U.S.C. § 7206(1) and committed and/or is attempting to commit tax evasion in violation of 26 U.S.C. § 7201.

39.     I submit that this affidavit supports probable cause for a warrant to search the premises described in Attachments A1-A2 and seize the items described in Attachment B.

## VI. REQUEST FOR SEALING

40.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/ continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully Submitted,

Elizabeth E. White
Special Agent
IRS, Criminal Investigation

Subscribed and sworn to before me on April 6, 2022.

HONORABLE CAROLINE H. GENTRY
UNITED STATES MAGISTRATE JUDGE

21

## ATTACHMENT A-1

### PROPERTY TO BE SEARCHED

Agents are hereby authorized to search the following location including any outbuildings and/or vehicles, as may be located on the property:

**1713 Woodman Drive, Dayton, OH 45420 identified as SELECT AUTO**

1713 Woodman Drive, Dayton, OH 45420 includes a white single-story used car dealership. There is a black sign on the building that reads "SELECT AUTO" and a large billboard on the right side of the building that reads "SELECT AUTO." The front of the building is the main entrance with glass windows and a glass front door. In the back of the building is the garage where vehicles are maintained.





## ATTACHMENT A-2

## PROPERTY TO BE SEARCHED

Agents are hereby authorized to search the following location including any outbuildings and/or vehicles, as may be located on the property:

**1502 Gatekeeper Way, Centerville, OH 45458**

1502 Gatekeeper Way, Centerville, OH 45458 is located in the Yankee Trace community. It is an approximately 3,000 square foot two-story residence with a side attached garage. The mailbox in from of the residence has the address number "1502." The residence was purchased by RAJESH and Sunita VAISH in December 2010.






## ATTCHMENT B

## ITEMS TO BE SEIZED

Agents are hereby authorized to seize the following items, whether in the form of paper or electronic data, related to RAJESH VAISH, Sunita Vaish, and MS Auto Sales dba Select Auto, or any variations of those names, for the period of January 1, 2015 to the present, as they may constitute fruits, evidence, and/or instrumentalities of violations of 26 U.S.C. §§ 7201 and 7206(1):

1. All personal and business financial records including:

   a. Bank records including bank statements, passbooks, deposit slips, deposit items, withdrawal slips, cancelled checks, credit and debit cards, credit card records, bank receipts, bank checks, money order receipts, wire transfers, credit and debit memos, safe deposit box records, and keys.

   b. Liability records including loan documents, letters of credit, promissory notes, contracts, mortgages, note agreements, loan or credit applications, payment schedules/records, security interests, and loan interest computations.

   c. Financial statements.

   d. All formal and informal bookkeeping/accounting records and supporting source documents relating to receipts and expenditures, including daily sheets, general ledgers, general journals, accounts and notes receivable, accounts and notes payable, balance sheets, income statements, statements of profit and loss, check registers, invoicing records, cost of goods sold calculations, inventory records, supplier records, invoices, timesheets, employee schedules, and receipt books.

   e. Investment records including statements and reports, receipts for the purchase, transfer, or sale of stocks, bonds and other securities, documents related to brokerage accounts and shares of stock, correspondence and memoranda to/from any investment firm or financial advisor.

   f. Expenditure records including check registers, bills, receipts and invoices, balance sheets, ledgers, and notes.

   g. Records related to the purchase, sale, ownership and control of assets such as boats, vehicles, real property, jewelry, electronics, precious gems and metals, furs and household furnishings. Such records include purchase/sale contracts, invoices, receipts, registrations, credit applications, financing agreements, lease agreements, insurance documents, and photographs of such assets.

2. All personal and business tax records including all state, local and federal tax returns together with all schedules and attachments, drafts and copies of any returns, non-filed or partially completed returns, all tax forms and schedules, tax preparation files, work papers,

correspondence to/from any tax authority, and correspondence to/from any accountant, or return preparer.

3. All correspondence/communications regarding bookkeeping, accounting, tax and tax return preparation matters.

4. Documentation of business ownership, organization, and control including articles of incorporation, partnership agreements, joint venture agreements, corporate minutes, corporate resolutions and by-laws, partnership dissolution records, and other official administrative records.

5. Labor and employment records including service agreements, independent contractor agreements, volunteer worker agreements and statements, lists of workers (paid or unpaid), job assignment sheets, duty rosters, employment applications, personnel files, worker identification documents (paid or unpaid), payroll records, timesheets, and work schedules.

6. Documents identifying vendors and suppliers including lists, communications, contracts, and receipts.

7. Real estate records including deeds, contracts for purchase/sale, settlement statements, notes, mortgages, lease agreements, property insurance documents, real estate listings, realtor agreements.

8. Indicia of occupancy, residency, rental and/or ownership of the premises or vehicles located at said premises, including, but not limited to utility and telephone bills, canceled envelopes, keys, deeds, purchase lease agreements, insurance policies, land contracts, titles, and vehicle registrations.

9. All records related to the sale of MS Auto Sales dba Select Auto and/or any other entities owned or controlled by RAJESH or Sunita VAISH including advertisements, brokerage agreements, offers, acceptance letters, contracts, appraisals, and correspondence with brokers and/or prospective buyers.

10. Cash registers and the register keys.

11. Address and/or telephone books, rolodex indices, and any papers reflecting names, addresses, telephone numbers, pager numbers, fax numbers, sources of supply, storage facilities, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists.

12. The opening and search, and removal, if necessary, of any safe or locked receptacle or compartment.

13. Computers or storage media used as a means to commit the violations described above. This includes information stored on computer hard drive(s), diskettes, tapes, USB drives or any other media capable of storing information in a form readable by a computer. This also

includes all copies of the information described above that may be stored on such media as archive or backup copies.

14. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"): including:

   a. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

   b. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

   c. evidence of the lack of such malicious software;

   d. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

   e. evidence indicating the computer user's state of mind as it relates to the crime under investigation;

   f. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

   g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

   h. evidence of the times the COMPUTER was used;

   i. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

   j. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

   k. records of or information about Internet Protocol addresses used by the COMPUTER;

   l. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages,

search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m. contextual information necessary to understand the evidence described in this attachment.

15. Routers, modems, and network equipment used to connect computers to the Internet.

16. As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

17. The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

18. The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

19. Agents are hereby authorized to photograph the interior of the premises and any contents therein.